# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-814V
UNPUBLISHED

| | |
|---|---|
| PATRICIA MCDORMAN,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: October 18, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Terrence Kevin Mangan, Jr, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On June 3, 2019, Patricia McDorman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine received on November 16, 2017. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted to SPU Motions Day.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to **$200,000.00**, for her actual pain and suffering, plus **$4,765.20** representing Petitioner's unreimbursed expenses, **and $2,078.56** representing Petitioner's lost wages.

## I.     Procedural Overview

As noted above, the case was initiated in June 2019. On October 1, 2020, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 30. Accordingly, on October 5, 2020, a ruling on entitlement issued finding Petitioner entitled to compensation for her SIRVA injury. ECF No. 32.

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on March 29, 2021. ECF No. 42. Petitioner filed her brief on June 11, 2021, requesting that I award her $240,000.00 in compensation - representing her past/actual pain and suffering. ECF No. 47. Conversely, in a brief filed on July 2, 2021, Respondent argued that Petitioner should be awarded only $145,000.00 for past pain and suffering. ECF No. 48. Petitioner filed a Reply brief on July 26, 2021. ECF No. 50. The parties have otherwise agreed upon an award of $4,765.20 representing Petitioner's unreimbursed expenses and $2,078.56 representing Petitioner's lost wages, so those amounts are not disputed and will be awarded as well. ECF No. 48 at 1.

In August of this year, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 71. The parties agreed, and an expedited hearing took place on September 24, 2021. Minute Entry dated October 1, 2021.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

## II.     Pain and Suffering

### A.  Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y*

---

[3] Leah Durant appeared on behalf of Petitioner, and Terrence Mangan appeared on behalf of Respondent. The transcript of the September 24, 2021 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

*Health & Hum. Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

## B. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. McDorman's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on September 24, 2021. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

For the reasons discussed below, and pursuant to my oral ruling on September 24, 2021 (which is fully adopted herein), I find that $200,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. There are several related bases for my decision.

First, the record establishes that Petitioner's shoulder pain was initially severe and acute enough to prompt her to call her primary care provider the same day she received her vaccination noting pain and numbness in her left arm. She also reported difficulty moving her arm and described her pain as a 6/10. Ex. 3 at 84-85. Thereafter, she underwent a significant amount of treatment for her injury for over two years, to include:

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

multiple rounds of physical therapy[5], ten steroid injections[6], an MRI scan[7], and two separate arthroscopic surgeries.[8]

Second, Petitioner's medical records establish that the course of her injury, and level of treatment it required, was far more severe than usual. While her reported pain levels varied significantly (at times relatively high, but also fairly low on other occasions), it was persistent enough to cause her to seek out, and receive, a significant amount of medical treatment as described above. Of note, only five months after her vaccination Petitioner underwent her first arthroscopic surgery on April 16, 2018. Her post-operative diagnoses included:  partially torn rotator cuff, chronic impingement syndrome, chronic left AC joint pain, type 1 SLAP lesion with fraying of the superior labrum, and partial biceps tendon tear. Ex. 4 at 1.

Unfortunately, Petitioner's surgical procedure did not relieve her shoulder pain, and she continued to seek out medical intervention to relieve it. But despite undergoing an additional 35 physical therapy appointments (Ex. 5 at 166-168) and seven steroid injections administered across three appointments (Ex. 7 at 26-27, 39, 43-45) – all subsequent to her April 2018 surgery – Petitioner's shoulder injury persisted. On December 26, 2018, Petitioner underwent a second arthroscopic surgery. Her post-operative diagnoses included: rotator cuff tendinosis, biceps tendon degeneration and tear, labral degeneration and fraying, SLAP tear, AC joint arthrosis, glenohumeral synovitis, and subacromial bursitis and adhesions. Ex. 10 at 25. After the second surgical intervention on Petitioner's left shoulder, Petitioner engaged in two further rounds of physical therapy for an additional 19 physical therapy sessions. Ex. 14 at 17-19, 92-94. At the start of her final round of physical therapy on October 1, 2019, it was noted that Petitioner presented for an evaluation of bilateral shoulder pain with dysfunction, noting that "she thinks the right shoulder pain is due to overuse post surgery." Ex. 14 at 20.

On December 27, 2019, Petitioner saw her orthopedist for a one year follow-up appointment to her second surgery in December 2018. Ex. 15 at 1. Her orthopedist noted she had been released from physical therapy and was "managing mild bilateral biceps tendinosis" with monthly massages. *Id.* at 2. The overall function of Petitioner's shoulder

---

[5] Petitioner underwent four rounds of physical therapy for a total of over 50 physical therapy sessions. *See* Ex. 5 at 166-68, 179 – 81, Ex. 14 at 17-19, 92-94.

[6] Petitioner received steroid injections on five separate dates over the course of 2018, a total of ten injections to were administered to treat her shoulder pain. Ex. 7 at 11, 26-27, 39, 43-45, 98.

[7] Petitioner underwent an MRI on December 20, 2017, the test was positive for a low-grade partial-thickness tear of the supraspinatus tendon and mild subacromial bursitis. Ex. 7 at 53.

[8] Petitioner underwent her first arthroscopic surgery on April 16, 2018, and her second on December 26, 2018. Ex. 4 at 1, Ex. 10 at 25.

was self-rated as 9/10 and she indicated that she was satisfied with the result of her physical therapy despite still suffering "occasional episodes of pain and stiffness." *Id.* at 2-3. Pain was seen again by her orthopedist on January 8, 2021, approximately a year later, for a two-year post-surgery examination. Ex. 16 at 1.

While it is evident from the medical records that Petitioner had not recovered by her one-year follow-up examination on December 27, 2019 (over two years after her vaccination), I find that her SIRVA and related sequela had significantly *improved* by that point. She nevertheless continued to suffer pain in both shoulders with certain activities, and difficulties sleeping, as reported at her two-year follow-up examination over a year later on January 8, 2021. Ex. 16 at 2. At that time, Petitioner self-rated her overall function of the left shoulder as 8/10, her left shoulder pain as 1/10, and noted she had been able to golf. *Id.* at 3. However, Petitioner was assessed with chronic pain of both shoulders and it was noted that she had reached maximum medical improvement, and that her "right shoulder pain was most likely a direct result of having to rely on it following her left shoulder surgery and throughout the duration of her post-operative recovery." *Id.* at 9. Going forward, it was recommended that she manage her "bilateral shoulder pain with avoidance of painful activities, activity modification, and NSAIDS as needed." *Id.* No further treatment records have been filed that would document additional treatment.

In making my determination, I have also fully considered Petitioner's affidavits, that of her husband, and the statement of a close friend, all of which detail the limitations in her overall enjoyment of life, physical activities and exercise of daily functions attributable to her injuries. Exs. 11, 17-19. In particular, Petitioner suffered greatly in her ability to care for and be active with her young children, including a son who has an autism spectrum disorder. Her inability to engage in golf at the Special Olympics with him (a joint endeavor precluding him from participating as well), caused Petitioner considerable pain and anguish. Ex. 11 ¶ 5, Ex. 17 ¶ 4. Petitioner also explained in her affidavit that she and her husband were avid sailors, but can no longer engage in this family hobby as a result of her injury and will have to sell their sailboat. Ex. 17 ¶ 3. Petitioner avers in her affidavit that she has had to adjust her daily life to a new normal due to the loss of independence she has suffered as a result of her shoulder injury. *Id.* at ¶ 7.

Based upon all of the above, Petitioner has demonstrated entitlement to a substantial award for pain and suffering award, and one higher than what has been recommended by Respondent. However, the requested $240,000.00 sum is slightly excessive.

Respondent, by contrast, argues that Petitioner's case is comparable to two single surgery cases, and thus the award for pain and suffering should range between the awards given in those cases - $135,000.00 to $160,000.00. *See Reed v. Sec'y of Health*

& *Hum. Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for actual pain and suffering); and *Blanco v. Sec'y of Health & Hum. Servs.*, No. 18-1361V, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding $135,000.00 for actual pain and suffering). These cases present some facts comparable to the facts of this case, and *Reed* in particular has relevance, since it also involved an injury to a mother with a special needs child. However, these cases each involved only one surgical procedure. I find the past pain and suffering experienced by Petitioner herein to be more severe, and therefore justifying a higher award.

Petitioner also argues that her case is comparable to another SIRVA decision involving *two* surgical procedures, but that her case is more severe. *See Schoonover v. Sec'y of Health & Hum. Servs,* No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (awarding $200,000.00 for actual pain and suffering).[9] I agree this case represents a good comparable, and also find *M.W. v. Sec'y of Health & Hum. Servs*, No. 18-267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. Mar. 17, 2021) (awarding $195,000.00 for actual pain and suffering) another claim involving a second surgical procedure to be a very good comparable.

Ultimately, an award somewhat higher than that in *M.W.* is most appropriate. Petitioner suffered a more severe injury, particularly given that she ultimately experienced pain in her non-injured arm as a result of overuse following her second shoulder surgery to treat her SIRVA.

## III.    Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $206,843.76 (representing $200,00.00 in compensation for her actual pain and suffering, $4,765.20 for unreimbursed expenses, and $2,078.56 for lost wages).** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this decision.[10]

---

[9] The parties also discussed at oral argument and in their briefs the applicability of *Lawson v. Sec'y of Health & Hum. Servs.*, No. 18-882V, 2021 WL 688560 (Fed. Cl. Spec. Mstr. Jan. 5, 2021) (awarding $205,000.00 for actual pain and suffering). However, I find that case, which involved a *third* surgery, to be somewhat more severe on balance of all factors than Petitioner's case.

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master